FILED

10/11/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0138

DA 21-0138

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 199N

IN THE MATTER OF:

J.J.S.,

     Respondent and Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DI 21-001
Honorable Kaydee Snipes Ruiz, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Taryn Gray, Hathaway Law Group, Missoula, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

     Lacey Lincoln, Hill County Attorney, Havre, Montana

Submitted on Briefs:  September 7, 2022

Decided:  October 11, 2022

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 J.J.S. appeals his 90-day commitment to the Montana State Hospital (MSH), challenging both the sufficiency of the District Court's findings and the legal authority to commit him under the governing statutes. We reverse the commitment.

¶3 On January 24, 2021, J.J.S. called law enforcement to report that his father had died. Upon arrival, law enforcement deduced his father was merely asleep, and that J.J.S. was instead experiencing auditory and visual hallucinations. J.J.S. had not taken his prescribed medication the previous two weeks. He was admitted to Northern Montana Hospital later that day.

¶4 The State filed a Petition for Involuntary Commitment and Katherine Moore, L.C.P.C., M.H.P.P., conducted a mental health examination of J.J.S., diagnosing him as suffering from schizophrenia. She recommended J.J.S. be committed to MSH due to his continuing actions in accordance with his hallucinations.

¶5 At the hearing on the petition, Moore testified that she believed J.J.S., if left untreated, would become a danger to himself or others. She based her opinion on J.J.S.'s ongoing hallucinations of a spaceship that impacted his behavioral choices, such as chasing

a person he believed was his father's assailant. When asked about J.J.S.'s ability to care for his own basic needs, Moore stated she was unsure about J.J.S.'s personal capacity for such care, but that his needs appeared to be met with the assistance of those who supported him. She acknowledged that she had opined J.J.S. could not substantially provide for his basic needs, food, shelter, health or safety within her written medical evaluation. Moore based this conclusion on J.J.S.'s ongoing hallucinations that threatened his safety, although she did not support this with evidence beyond her opinion.

¶6    The District Court issued its Findings of Fact, Conclusion of Law, and Order (Order), concluding J.J.S. suffered from a mental disorder; that if untreated, he would likely become a danger to his own safety; and that he required commitment to MSH, citing generally "§§ 53-21-126 and 53-21-127, MCA." The court based its decision to commit J.J.S. on Moore's testimony, which the court paraphrased as: "Respondent's mental disorder will, if untreated, predictably result in deterioration of his mental condition to the point at which he will be unable to provide for his own basic need of safety." *See* § 53-21-126(1)(d), MCA. The District Court thus ordered a 90-day commitment to MSH. J.J.S. appeals.

¶7    We review a district court's civil commitment order to determine whether its findings of fact are clearly erroneous and whether its conclusions of law are correct. *In re F.S.*, 2021 MT 262, ¶ 6, 406 Mont. 1, 496 P.3d 958. "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence or if, after a review of the entire record, we are left with the definite and

firm conviction that a mistake has been made." *In re R.H.*, 2016 MT 329, ¶ 9, 385 Mont. 530, 385 P.3d 556 (internal quotations and citation omitted). "Whether a district court's findings of fact satisfy statutory requirements is a question of law." *In re R.H.*, ¶ 9 (quoting *In re S.M.*, 2014 MT 309, ¶ 13, 377 Mont. 133, 339 P.3d 23). We review such questions of law de novo. *In re Mental Health of O.R.B.*, 2008 MT 301, ¶ 14, 345 Mont. 516, 191 P.3d 482. "We have long emphasized the necessity of 'strict adherence' to the statutory scheme governing involuntary commitment. . . ." *In re R.H.*, ¶ 10 (quoting *In re B.D.*, 2015 MT 339, ¶ 7, 381 Mont. 505, 362 P.3d 636) (internal quotations omitted).

¶8     J.J.S. argues the District Court's findings were insufficient to satisfy § 53-21-127(8), MCA, governing commitment orders. In response, the State acknowledges the Order "did not include sufficient facts supporting the [D]istrict [C]ourt's decision to commit J.J.S. nor did it include any findings regarding availability of least restrictive alternatives," but argues we should consider the court's oral findings and the doctrine of implied findings to supplement the written findings. While the Order appears facially insufficient, we do not take up the State's implied findings argument because we conclude that J.J.S.'s legal authority argument establishes reversible error.

¶9     J.J.S. contends that, because the District Court relied only on findings about J.J.S.'s predictably deteriorating inability to provide for his own basic needs, the court's commitment was premised solely upon § 53-21-126(1)(d), MCA. The State agrees with this assessment of the Order. J.J.S. thus argues the commitment violated § 53-21-127(7), MCA, which provides that, "if the court relies solely upon the criterion provided in

4

53-21-126(1)(d), the court may require commitment only to a community facility. . . .and may not require commitment at the state hospital. . . . ." Section 53-21-127(7), MCA. The State likewise concedes this error but argues that commitment to a community facility was properly supported, although it does not seek remand for entry of a proper commitment order because J.J.S. has already discharged his commitment.[1]

¶10 The parties' analysis is correct. Section 53-21-127(7), MCA, provides in full:

> Satisfaction of any one of the criteria listed in 53-21-126(1) justifies commitment pursuant to this chapter. However, *if the court relies solely upon the criterion provided in 53-21-126(1)(d)*, the court may require commitment only to a community facility, which may include a category D assisted living facility, or a program or an appropriate course of treatment, as provided in subsection (3)(b), and *may not require commitment at the state hospital*, a behavioral health inpatient facility, or the Montana mental health nursing care center.

(Emphasis added.) As such, if an individual is committed on the sole basis that his condition will predictably deteriorate and he will become a danger to himself or others, or become unable to provide for his own basic needs and safety, then the court cannot lawfully commit the individual to MSH, which occurred here.

¶11 The District Court lacked the legal authority to commit J.J.S. to MSH on the ground of the predictable deterioration in his ability to provide for his own basic needs and safety

---

[1] "An appeal from an order of involuntary commitment is not moot despite the respondent's release because the issues are capable of repetition and yet otherwise would evade review." *In re Mental Health of W.K.*, 2020 MT 71, ¶ 15, 399 Mont. 337, 460 P.3d 917 (citation omitted).

under § 53-21-126(1)(d), MCA, and instead was limited to a commitment on that basis to a less restrictive facility. Therefore, we must reverse the Order.

¶12 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's interpretation and application of the law in committing J.J.S. to MSH was incorrect.

¶13 Reversed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR